(No. 3118— ▮▮▮▮▮▮)

BERNICE TAMULIS, Claimant, vs. STATE OF ILLINOIS, Respondent.

Opinion filed May 10, 1938.

MARTIN WALSH, for claimant.

OTTO KERNER, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Claimant herein is the surviving widow of Frank J. Tamulis who was employed by the respondent as a State Highway Policeman. On the 9th day of August, 1937, Frank Tamulis was killed, and his widow files her claim for an award of Four Thousand ($4,000.00) Dollars, under the terms of the Workmen's Compensation Act, alleging that his death was the result of an accidental injury arising out of and in the course of his employment by the State.

From the evidence herein it appears: That Mr. Tamulis was a police officer of the State of Illinois, with headquarters at 123rd & Cicero Ave., Chicago, Illinois, and residing at 4924 S. Honore St., Chicago. His patrol section was the South-

west Highway. On August 9th, 1937 he worked on the patrol shift from 4 o'clock in the afternoon until 12 o'clock midnight. When relieved from duty he started home, using a police motorcycle for such purpose. About 12:30 A. M. at a point approximately one and one-half blocks East of Cicero Avenue, on S. B. I. Route No. 7, he drove the motorcycle into the rear of a Model T Ford truck, then being driven along the highway in the same direction that he was traveling. The truck was fully equipped with proper lights, but the night was somewhat foggy. The driver of the truck felt the impact, stopped his truck and walked back to determine the cause and found the motorcycle and its rider lying on the pavement. Another police officer, Samuel McDowell, of 4241 Drexel Ave., Chicago, testified that he was driving a police squad car on the Southwest Highway east of Cicero, between 12 and 12:30 A. M. on August 9th; that he did not see the actual collision but saw sparks fly through the fog and immediately afterwards reached the body of Officer Tamulis lying on the South lane of the highway; that the driver of the truck came running back and aided in putting Officer Tamulis in another car which took him to the hospital, upon arrival at which he was found to be dead. Officer McDowell further testified that Tamulis had finished his work at 12 o'clock midnight, and at the time of his death was not on duty but was on his way home; that although he was riding a motorcycle, it was not the custom of the officers to take motorcycles home with them and that they had orders that motorcycles were not to be ridden home, and they were only to take them when they had specific instructions to do so. No one testified that Officer Tamulis had any instructions to ride his motorcycle home. One of his associate officers, Frank Webster, testified that he talked with him at the Police Station about five minutes after 12 o'clock on the morning he was killed; that it was time to go home and Frank Tamulis told him they were to go on a funeral detail together the next morning, but Officer Webster further testified that he found out later they were not supposed to go on the funeral detail, and that no permission or authority for same had been made. The only importance of the funeral assignment is that if Tamulis had been ordered to go on such assignment in the morning, it might follow that he had received authority to take the motorcycle home that night. If such was the case we agree with Counsel for Claimant that

although Captain Barnheoft, Commanding Officer of the Station, was absent from the City when the proof was taken in this case, yet there should have been some one who was able to testify as to the facts in regard to this matter, if any such permission had in fact been given.

Even though the record disclosed however that Officer Tamulis had permission to ride the motorcycle home on the morning in question, the circumstances would still not be sufficient to support a finding that the accident in question arose out of and in the course of his employment. The general rule is that a man's employment does not begin until he reaches the place where he is to work and does not continue after he has left. There may be circumstances under which an employee in going to and returning from his place of employment can be held to be in the line of his employment, but such cases are governed and controlled by their own particular facts and circumstances. It definitely appears from the evidence in this case that Officer Tamulis' employment and duty had ceased at 12 o'clock when he left the State Highway Police Station. He had no further duties to perform until he again reported to his superior officer, and regardless of whether he was riding the State-owned motorcycle with or without permission, there are no circumstances in the case which take it out of the general rule, that ''An employer is not liable under the Workmen's Compensation Act for injuries received by an employee while on the road to or from his employment.'' This ruling is supported by the decision of our courts in a long line of cases including *Shegart* vs. *Ind. Comm.*, 336 Ill. 223. The cases cited by claimant do not bring the circumstances of this case within the exceptions shown in the several cases cited. An award will therefore be denied and the case is hereby dismissed.